OPINION OF THE COURT
Eric N. Vitaliano, J.
In a CPLR article 78 proceeding in the nature of mandamus, petitioner Salvatore Culotta seeks the entry of an order (1) directing the New York City Department of City Planning (DCP) to issue a “school seat certification” pursuant to his application No. NO40317RCR, or, in the alternative, (2) granting monetary damages. On this record, he is entitled to neither. The petition, therefore, is denied and the proceeding is dismissed.
Alleging that he is the owner of land in Staten Island’s Special South Richmond Development District, Culotta filed an application for school seat certification with DCP on March 2, 2004. Pursuant to Zoning Resolution of City of New York § 107-123, as a prerequisite to applying for a building permit to construct residential dwelling units in this special district, such as the 12 units in the six detached residences that petitioner proposes to build on the property which is the subject of his application and about which mandamus is sought, the New York City Planning Commission (CPC)[1] must certify that capacity exists sufficient to accommodate any expected increase in the pre-high school *585 student population attributable to the proposed development.[2] As applicable, Zoning Resolution § 107-123 provides as follows:
“Public Schools
“For any development containing residential uses, the Department of Buildings shall be in receipt of a certificate from the Chairperson of the City Planning Commission which certifies that sufficient school capacity exists to accommodate the anticipated primary and intermediate public school children of the development. All applications for certification pursuant to this Section shall be referred by the Chairperson of the City Planning Commission to the Board of Education.
“The Board of Education shall issue a report concerning the availability of school capacity within sixty days after receipt of the application. The Chairperson of the City Planning Commission shall respond within 90 days after receipt of an application.”
Petitioner further alleges that when the requested certification was not forthcoming, he made inquiry at DCP and was advised that the certification was being withheld as the result of a violation which the Department of Buildings (DOB) had placed upon the property on April 22, 2004. Although questioning DCP’s authority to withhold certification on that ground, petitioner cured the outstanding violation on or about May 25, 2004. It is undisputed that a second violation issued by DOB on June 10, 2004, pursuant to Zoning Resolution § 107-321, remains outstanding, and that DCP has continued in its refusal to issue a school seat certification. Arguing that the refusal by DCP is unlawful, petitioner moves by order to show cause to compel issuance of the certification pursuant to CPLR article 78.
In opposition, respondents have denied in their verified answer “knowledge or information sufficient to form a belief as to the truth of allegations” of ownership, and assert (albeit in a footnote) that the City’s fairtax records reflect (1) that *586 petitioner transferred ownership of the subject parcel to an entity known as Wilbur Associates, Inc. on December 12, 2002, and (2) that the present owner of record is an individual by the name of Jeremiah Smith.[3] Substantively, respondents maintain that their continuing refusal to issue the certificate is based on DCP’s policy of withholding school seat certification “if there is any outstanding impediment to the project going forward” (affidavit of Leonard Garcia-Duran, Director of the Staten Island Borough Office of the New York City Department of City Planning, dated July 26, 2004, para 9), such as petitioner’s outstanding violation of Zoning Resolution § 107-321 regarding unauthorized tree removal. According to the Borough Director, this policy insures that “available school seats [will] not [be] ‘tied up’ for a full year [by] a project that may not go foward” (id.). The question presented is whether DCP’s policy conflicts with the strictures of the Zoning Resolution and, if so, whether mandamus will he to redress petitioner’s grievance with it.
The unstated premise in petitioner’s syllogism for relief, of course, is that DCP can issue the school seat certification petitioner seeks. Yet, until that fact is established, the heart of his argument as to whether DCP must issue the certification is not reached. Although DCP does not contest its ability under the Zoning Resolution to issue school seat certification to the petitioner, or any other applicant for that matter, the legislation implementing the most recent overhaul in the governance of New York City’s public schools commands a contrary conclusion. It is also fatal to the petition for mandamus.
The school seat certification provisions of the Zoning Resolution regulating development in Staten Island’s Special South Richmond Development District (§ 107-123) have, apparently, not been substantially amended since they were made effective on June 23, 1977. The section refers, for example, to the long *587 defunct New York City Board of Estimate. Specifically in issue here is its mandate that the “Board of Education shall issue a report concerning the availability of school capacity within sixty days after receipt” of a development application like the one filed by Culotta, and which, further, permits seat certification by CPC where school seat capacity is not presently available upon a determination by the “Board of Education after consulting with the Community School Board” that such lack of capacity “will have a minimal effect on the concerned schools.” (§ 107-123.)
While this South Richmond zoning regulation has remained unchanged, chapter 91 of the Laws of 2002 and chapter 123 of the Laws of 2003 have rocked the governance of New York City schools at its foundation. The radical change wrought by the Legislature shifted management responsibilities for the schools from the Board of Education to a municipal Department of Education headed by a chancellor directly appointed by the Mayor of the City of New York. The governance change, however, did not eliminate the Board of Education of the City of New York referred to in the Zoning Resolution. Its existence was specifically continued by Education Law § 2590-b (1) (a). But, though the new governance law maintained the Board’s life, two other changes crippled its ability to discharge the responsibilities assigned to it by the Zoning Resolution.
First, chapter 91, § 8 of the Laws of 2002 repealed former Education Law § 2590-c, thereby terminating the existence of the Community School Board with whom the Board of Education was to consult in preparing its report to CPC concerning school seat capacity in the South Richmond special district. Far more significantly, chapter 123 of the Laws of 2003 adopted strict limitations on what the Board of Education was authorized to do. Current Education Law § 2590-g provides in more than precatory language: “The city board shall advise the chancellor on matters of policy affecting the welfare of the city school district and its pupils. The board shall exercise no executive power and perform no executive or administrative functions.” (Emphasis supplied.) The new law then lists six specific grants of power and duty to the Board, none of which would authorize or permit the Board to provide a report to CPC as demanded in Zoning Resolution § 107-123.
Clearly, then, absent a revision in the state Education Law authorizing the Board of Education to accept such a reference from CPC and issue a school capacity report as provided in the *588 Zoning Resolution in connection with a South Richmond special district residential application pending before City Planning or, in the alternative, an amendment to the Zoning Resolution assigning the responsibility for assessing public school capacity in South Richmond to the Department of Education or some other entity which can lawfully accept it, neither CPC nor DCP can lawfully provide school seat certification to Culotta or anyone else since the Board of Education cannot lawfully provide City Planning the school capacity report essential to the seat certification process. Mandamus lies only where an agency has “failed to perform a duty enjoined upon it by law.” (CPLR 7803 [1].) Here, ipso facto, mandamus cannot lie because the petitioner seeks to compel the performance of an act neither CPC nor DCP can lawfully perform. Left at the gate by the governance changes to the Board of Education without parallel revisions in the Zoning Resolution’s South Richmond special district regulations, the petition must be dismissed.
Furthermore, even if DCP could lawfully issue a school seat certification to the petitioner under the Zoning Resolution, the result would be no different. Contrary to petitioner’s position, the court does not read Zoning Resolution § 107-123 as mandating the issuance of a school seat certification upon the favorable report of the Board of Education, or any successor charged with its responsibility, regarding available classroom space in the special South Richmond development district. Rather, the Zoning Resolution requires that the Chairperson of CPC “respond” to an apphcation for school seat certification within 90 days after receipt, a responsibility which over the years, it seems, has been delegated to DCP Nor does the Zoning Resolution specifically restrict the scope of CPC’s inquiry to the issue of seating capacity, as it further provides that a certification “may be granted” upon the approval of an applicant’s plan to expand existing school space based, inter alia, upon “such guarantee of construction with provision for future school occupancy as may be accepted by the Board of Education and the Chairperson of the City Planning Commission.”
Under these circumstances, it is the opinion of this court (1) that respondents were not precluded from adopting reasonable guidelines for evaluating requests for school seat certification, and (2) that the policy actually adopted is rationally related to the purpose of certification in that it permits the number of available seats to be allocated to those developments which are prepared to go forward, while preventing less viable develop *589 ments from needlessly “tying-up” (for the period of one year) school seats which may not be needed in the near future. In fact, in a time of limited funds for new school construction, the allocation of limited seating capacity to prospective students who may never materialize at the expense of current development might well be regarded as the mismanagement of an essential resource, i.e., public education.
It is well settled that courts will ordinarily defer to the construction of statutes and regulations by the agencies responsible for their administration, provided only that an agency’s construction is neither irrational nor unreasonable (see e.g. Albano v Kirby, 36 NY2d 526, 532 [1975]). “Absent an arbitrary and capricious regulation or interpretation of said regulations [by an administrative agency acting within the scope of its authority], courts should defer to the agency” (Tommy & Tina v Department of Consumer Affairs, 95 AD2d 724, 724 [1st Dept 1983]), affd 62 NY2d 671 [1984]).
No such impropriety on the part of CPC or DPC has been demonstrated in this case, notwithstanding petitioner’s allusion to a perceived improper motive at City Planning of frustrating new development until an anticipated zoning change could become effective. Indeed, at the opposite pole, in a letter to the Department of City Planning dated June 4, 2004, petitioner’s architect observed that “[o]ver the past two months, I have received numerous school seat certification approvals from your department, not including the subject application.”
Again, assuming CPC or DCP could lawfully issue Culotta a school seat certification but did not, a further issue which does warrant consideration is whether CPC was legally required to issue the requested school seat certification when petitioner “cured” his first alleged DOB violation within the 90 days during which CPC was required to act. Here, there is apparently no dispute that Culotta’s application was filed on March 2, 2004, which means that CPC was required to respond by June 1, 2004 (see General Construction Law § 25-a). On April 22, 2004, petitioner was issued his first DOB violation. Moreover, it has now been established that the “cure” was effected on May 25, 2004, well within the 90-day period, but subsequent to DCP’s determination to withhold approval based on its pendency. The issue thus presented is whether CPC through DCP was required, in effect, to monitor the situation throughout the 90-day period for the sole purpose of determining whether any violations or other impediments to the development “going foward” existed on the 90th day.
*590 The court thinks not. There is no express language requiring it. Plus, the practical difficulties associated with a monitoring requirement appear insurmountable.
When a certification is issued, it provides for future untoward events through the recitation of the following admonition, which closely parallels DCP’s avowed certification criteria:
“The school seat certification has been issued on the basis that development of dwelling units at the above referenced location requires no additional approvals pursuant to the Special South Richmond Development District regulations. In the event it is determined that additional approvals are required, this school seat certification shall be null and void and shall have no further force and effect.”
See, e.g., a DCP school seat certification annexed to petitioner’s moving papers as exhibit B. There is no comparable, self-executing mechanism applicable in the reverse situation, i.e., when an impediment is removed. Nor is there any practical way of instituting one, since a mandatory reexamination of, e.g., the applicant’s status at the close of business on the 90th day for the purpose of ascertaining whether its violations of record had been cured, even if capable of achievement in a timely fashion, would effectively preclude DCP from “responding” to the application within the 90 days required by law.
Equally problematic would be any attempt to read a “tolling” provision into the resolution’s 90-day requirement during which violations of record might be cured. Despite the obvious clerical difficulties associated with ascertaining, halting and restarting the 90-day “clock” every time that a violation is lodged or cured, the addition of such a rule would be of no avail to this petitioner, as the second (uncured) violation was filed by the 100th day after his DCP filing (i.e., June 10, 2004), while the initial violation took 33 days to cure. Thus, even under a “tolling” analysis, an outstanding violation clearly existed on the revised date by which DCP would have been required to act as extended by the tolling.
Finally, even assuming arguendo that DCP had improperly viewed as an impediment to development the first DOB violation, which did not arise under the Zoning Resolution enacted specifically to benefit the special South Richmond development district, the fact remains that such a violation now exists which, by its terms, mandates the revocation of any existing permit and precludes the reinstatement or issuance of any further building permit
*591 “until the owner of the zoning lot either posts with the Comptroller of the City of New York a landscaping performance bond in an amount determined by the [City Planning] Commission or completes the replanting in accordance with the requirements set forth by the Commission in order to correct the planting violations.” (Zoning Resolution § 107-321 [emphasis deleted].)
Accordingly, not only would the issuance of a school seat certification at this juncture be of no benefit to petitioner in his quest for a building permit, but it would necessitate a violation of CPC’s own rules and regulations regarding such issuance. “Mandamus will not lie to compel a public official to perform a vain or useless or illegal act” (Beckmann v Talbot, 252 App Div 870, 871 [2d Dept 1937], revd on other grounds 278 NY 146 [1938]; see People ex rel. Sherwood v State Bd. of Canvassers, 129 NY 360, 370 [1891]).
Any surviving claim which petitioner may have for monetary damages on constitutional grounds or otherwise may be addressed in a plenary action. (See Kerlikowske v City of Buffalo, 305 AD2d 997 [4th Dept 2003]; Steve’s Star Serv. v County of Rockland, 278 AD2d 498 [2d Dept 2000].)
In consonance with the foregoing, it is ordered that the petition is denied and the proceeding is dismissed.

. The New York City Charter creates both a City Planning Commission (§ 192) and a Department of City Planning (§ 191). The City Planning Commission consists of 13 members and is chaired by the Director of City Planning, who is also the head of the Department of City Planning. The Commission has the overall responsibility to plan and zone for the growth, improvement and development of the City of New York. (NY City Charter § 192 [d], [f].) Providing for more than mere coexistence of the Commission and the Department, the Charter leaves to the Department the responsibility of hiring the professionals and other employees necessary to discharge the city planning function but also directs the Department to provide all necessary staff assistance to the Commission so that the Commission can attend to matters under its jurisdiction. (NY City Charter § 191 [b] [2]; [c].) In the strictest sense, if mandamus were to lie to vindicate the petitioner’s claimed right to school seat certification, then it would lie against the Commission, which is assigned that responsibility under the Zoning Resolution, rather than the Department against whom this proceeding is brought. In light of the codified and practical intertwining of these two municipal entities, the failure of the respondents to assert an appropriate jurisdictional defense in their verified answer, and this court’s ultimate disposition of this matter, any oversight in *585 not specifically naming the City Planning Commission as a respondent is insignificant.

. Previous applications filed by petitioner in 2001 and 2002 had been granted, respectively, on May 3, 2001 and May 3, 2002, but lapsed pursuant to their terms when “substantial construction of the foundations . . . had not been completed within one year from the date of such certification.” (Zoning Resolution § 107-123.)

. In this regard, it is worthy of note that annexed to the respondents’ answering papers is a copy of a violation issued by DOB on April 22, 2004 which lists “Jeremiah Smith” as the owner of the property that is the subject of this proceeding. Also annexed is a copy of the second violation issued by DOB on June 10, 2004. This violation relates as well to the subject property but names the petitioner here as the owner. Effectively, the two violations, at best, cancel each other and offer no support for the assertion by the respondents that the petitioner is not the owner of the property and, by implication, has no standing to bring this proceeding. Moreover, the court views the respondents’ footnote controverting petitioner’s ownership of the property as an appendage to the verified answer, and, therefore, unsworn. The sworn claim in the petition that Culotta is the owner of the property in interest is, thus, not controverted by evidence of any probative value.